IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | |
|---|---|
| RYAN L. HEDRICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No: 4:10-cv-00012-F |
| ) | |
| SOUTHERN STATES COOPERATIVE, INC. ) | |
| and MELVIN GOAD, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS**

Defendants Southern States Cooperative, Inc. ("Southern States") and Melvin Goad ("Goad") (collectively "Defendants"), by counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby submit this memorandum in support of their Motion to Dismiss the Complaint of Plaintiff Ryan L. Hedrick ("Hedrick") for failure to state a claim upon which relief can be granted.

**INTRODUCTION**

Hedrick filed his Complaint in the General Court of Justice (Superior Court Division) for Beaufort County, North Carolina, asserting claims against Defendants for alleged violations of the Fair Labor Standards Act ("the FLSA"), 29 U.S.C. § 201 *et seq.*, the North Carolina Wage and Hour Act ("the NCWHA"), N.C.G.S. 95.25.1 *et seq.*, and for wrongful termination in violation of the public policy of North Carolina. Based on federal question and diversity jurisdiction, the case was removed to this Court. As will be explained below, the Complaint should be dismissed with prejudice in its entirety because Hedrick fails to state a claim upon which relief can be granted under federal or state statutes or the common law of North Carolina.

Hedrick has asserted claims based on an alleged failure to pay overtime under the FLSA and the NCWHA. Defendants, however, had no obligation to pay Hedrick overtime. Hedrick was responsible for operating a fish farm, and therefore his employment is expressly excluded from overtime under two specific exemptions to the overtime requirements of the FLSA. Hedrick has also alleged a violation of the NCWHA. The NCWHA, however, does not apply to any employer that is covered by the FLSA. In other words, the FLSA preempts the NCWHA. Even if the NCWHA did apply, it also contains two exemptions from its overtime requirements applicable to employees engaged in fish farming that are virtually identical to the exemptions under the FLSA. Accordingly, Hedrick's claims for overtime in his First and Second Claims for Relief, under the NCWHA and the FLSA, respectively, should be dismissed.

In his Third Claim for Relief, Hedrick asserts a claim for wrongful discharge in violation of the public policy of North Carolina. Hedrick claims that he was discharged in violation of the public policy of North Carolina because he asserted a statutory right to overtime under the NCWHA and was allegedly terminated as a result. Hedrick's claim fails for the obvious reason that he had *no legal right* to overtime under the NCWHA (or any other law), and therefore the public policy of North Carolina could not have been violated. It is a fundamental principle of North Carolina law that in order for an employee to assert a valid claim for wrongful discharge, the employee must have asserted a right protected under North Carolina law. Hedrick has failed to meet this requirement, so his claim for wrongful discharge fails.

### STATEMENT OF MATERIAL ALLEGATIONS[1]

Hedrick was employed by Southern States from February 2002 through June 3, 2009. ¶¶ 4, 10, 11.[2] Hedrick is a citizen of North Carolina. ¶ 3. Southern States is a Virginia

---

[1] Defendants do not admit the truth of the allegations set forth in this memorandum, which are taken from the Complaint. The allegations are set forth solely for purposes of this motion.

corporation with its principal place of business in Richmond, Virginia, but which conducts business in North Carolina. ¶ 5. Goad was Hedrick's direct supervisor while he was employed at the Southern States location in North Carolina. ¶¶ 6, 13.

According to Hedrick, Defendants are employers as defined by FLSA, and they are enterprises "engaged in commerce" or in the production, selling, or handling of goods for commerce as defined by the FLSA. ¶¶ 7-8. At all times during Hedrick's employment with Southern States, it had an annual gross dollar volume of sales made or business done of not less than $500,000.00 per year. ¶ 9.

Southern States hired Hedrick in February of 2002 as an "Aquaculture Facility Specialist" to grow tilapia fish on a fish farm in North Carolina. ¶ 10. Hedrick operated a single fish farm for Southern States until some time in 2005, performing such duties as catching and hauling fish from tanks, as well as maintenance tasks related to the farm's operation, such as cleaning the fish farm and other tasks relating to its farming operation. ¶ 14. In 2005, Hedrick became responsible for operating two fish farms growing tilapia, and performed "essentially the same duties" for both facilities. ¶ 15. Hedrick worked on the farm growing fish, and was not "customarily and regularly engaged in making sales or obtaining orders or contracts for services away from Defendants' place of places of business." ¶ 19.

In 2005, Hedrick alleges that he informed Defendants he was working sixty hours per week and was working on weekends and holidays, and he demanded to be paid overtime wages. ¶ 16, 56. Hedrick alleges that he regularly worked in excess of forty hours each workweek through the date of his discharge on June 3, 2009, but did not receive overtime pay, nor has he received any overtime pay to date. ¶¶ 11, 21, 22, 31, 32, 38, 45, 55. Defendants allegedly

---

[2] "¶ ___" refers to the numbered paragraphs of the Complaint.

informed Hedrick he would be terminated if he continued to ask for overtime compensation. ¶ 29, 56. Hedrick continued to complain that he was owed overtime, and he alleges he was terminated "because he reported wage and hours violations to the human resources department . . . in violation of the express public policy declarations contained in N.C. Gen. Stat. § 95-25.1(b)" (i.e., the NCWHA). ¶¶ 56, 60.

## ARGUMENTS

### I. Standard For Motion To Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(6), the Court must dismiss an action if the plaintiff fails to state a claim upon which relief can be granted. Dismissal is proper under Rule 12(b)(6) where a plaintiff fails to plead a short and plain statement of the claim showing that he is entitled to relief. *See Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). The Court must ascertain whether the Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). Facial plausibility is met when the Court can draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949; *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, No. 08-2097, 2009 U.S. App. LEXIS 28539, at *9-12 (4th Cir. Dec. 29, 2009) (discussing and applying the pleading standard set forth in *Iqbal*).

"Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Rossmann v. Lazarus*, No. 1:08-cv-316, 2008 U.S. Dist. LEXIS 81701, at *8 (E.D. Va. Oct. 15, 2008). For the purposes of a motion under Rule 12(b)(6), however, the Court is not required to accept as true the legal conclusions set forth in a plaintiff's

complaint. *See District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir. 1979).

## II. Hedrick Cannot State A Claim Under The FLSA Because Hedrick's Employment Was Plainly Exempt From Any Obligation To Pay Overtime.

In the context of statutory overtime claims, "[i]f facts are alleged in the complaint which make it possible to determine whether the exemption applie[s], the legal question of applicability of the exemption may be determined on a motion to dismiss." *Robbins v. Zabarsky*, 44 F. Supp. 867, 870 (D. Mass. 1942). Here, based on the facts alleged in the Complaint, two exemptions to the overtime requirements are plainly applicable to Hedrick's employment. Under the FLSA, employees involved in the *farming* of *fish* are exempt from overtime pursuant to two provisions of that statute: (1) the fishing enterprises exemption, which exempts employees employed "in the . . . farming of any kind of fish" (29 U.S.C. § 213(a)(5)); and (2) the agricultural workers exemption, which exempts "any employee employed in agriculture," including "fish farming activities." *See* 29 U.S.C. § 213(b)(2); 29 CFR 780.109. Thus, Hedrick cannot escape the unavoidable conclusion that he was exempt from any entitlement to overtime under the FLSA, and this claim never should have been filed.

### A. The Fishing Enterprises Exemption Applies To Hedrick.

Section 213 of the FLSA contains the following exemption from the overtime requirements:

> The provisions of section[] . . . 207 of this title [the maximum hours/overtime section] shall not apply with respect to . . . *any employee employed in the catching, taking, propagating, harvesting, cultivating, or farming of any kind of fish*, shellfish, crustacean, sponges, seaweeds, or other aquatic forms of animal and vegetable life, or in the first processing, canning or packing such marine products at sea as an incident to, or in conjunction with, such fishing operations, including the going to and returning from work and loading and unloading when performed by any such employee; . . . .

29 U.S.C. § 213(a)(5) (emphasis added).[3] "The meaning of the statute must in the first instance at least be sought in its language, and if that is plain and the Act is constitutional, the sole function of the court is to enforce it." *See Fleming v. Hawkeye Pearl Button Co.*, 113 F.2d 52, 55 (8th Cir. 1940) (discussing why the fishing enterprises exemption does not apply to the manufacture of buttons from clam shells). Therefore, employees employed in the catching, propagating, harvesting, cultivating, or farming of any kind of fish are not entitled to overtime.

Here, Hedrick has pled himself squarely into the jaws of the exemption. Hedrick alleges that he "was hired by Defendant as an 'Aquaculture Facility Specialist' . . . *to grow tilapia fish on a fish farm* near Washington, North Carolina." ¶ 10 (emphasis added). Hedrick "initially operated a single fish farm for the Defendants, and performed a wide range of duties, including . . . *catching and hauling fish* from tanks, electrical work, and other manual labor." ¶ 14 (emphasis added). Further, Hedrick alleges that in 2005, "Defendants informed Plaintiff that they intended to open a second fish farm and that Plaintiff would operate both the new fish farm and the old fish farm, *performing essentially the same duties*." ¶ 15 (emphasis added). Finally, Hedrick "was not customarily and regularly engaged in making sales or obtaining orders or contracts for services *away from Defendants' place or places of business*." ¶ 19 (emphasis added). In other words, Hedrick's sole function was to *operate* fish farms to grow fish.

Based on the facts alleged, Hedrick fails to state a claim upon which relief can be granted because he was plainly covered by the fishing enterprises exemption. Southern States hired Hedrick to operate fish farms, which he did for seven years. Hedrick was employed to "grow tilapia fish on a fish farm," and he caught and hauled fish from tanks, working at all times with the fish and on the farms where they were cultivated. The fishing enterprises exemption, by the

---

[3] Section 207 of the FLSA provides that in the absence of an exemption, no employer shall employ an employee for a workweek longer than forty hours unless such employee receives compensation at a rate not less than one and one-

plain language of the statute, applied to Hedrick, and he is not entitled to relief under the FLSA for this reason alone.

### B. The Agricultural Workers Exemption Applies To Hedrick.

Section 213 of the FLSA also contains the following exemption from the maximum hour (overtime) requirements, which fully applies to Hedrick: "The provisions of section 207 of this title shall not apply with respect to . . . any employee employed in agriculture . . . ." 29 U.S.C. § 213(b)(12). The FLSA defines "agriculture" to "include[] farming in all its branches . . . ." 29 U.S.C. § 203(f). The Code of Federal Regulations explains that the agricultural exemption fully applies to employees who are employed in "fish farming activities:"

> [U]nlike the specifically enumerated operations, the phrase 'farming in all its branches' does not clearly indicate its scope. In determining whether an operation constitutes 'farming in all its branches,' it may be necessary to consider various circumstances such as the nature and purpose of the operation of the employer, the character of the place where the employee performs his duties, the general types of activities there conducted, and the purpose and function of such activities with respect to the operations carried on by the employer. . . . *For example, fish farming activities fall with the scope of the meaning of 'farming in all its branches'* and employers engaged in such operations would be employed in agriculture.

29 C.F.R. 780.109 (emphasis added); *see also* 29 C.F.R. 780.120 ("Fish are not livestock, but employees employed in propagating or farming of fish may qualify for exemption under section 13(a)(6) or 13(b)(12) of the Act as stated in section 780.109 as well as under section 13(a)(5), as explained in part 784 of this chapter."); *see, e.g., Domsea Farms, Inc.*, 211 N.L.R.B. 832, 833 (NLRB 1974) (holding that employees on a commercial fish [coho salmon] farming operation were agricultural laborers and subject to an exemption under the NLRA, which defines "agriculture" and "agricultural laborer" by reference to the FLSA).

Again, based on the facts alleged, Hedrick was plainly engaged in "fish farming activities" and therefore falls precisely within the "agricultural" exemption from overtime.

---

half times his or her regular rate. 29 U.S.C. § 207.

Because both the fishing enterprises exemption and the agricultural workers exemption apply to his employment, Hedrick is not entitled to overtime under the FLSA, and thus he is not entitled to relief under federal law.

## II. Hedrick Fails To State A Claim For Overtime Under The North Carolina Wage And Hour Act.

### A. Because Hedrick Alleges That Defendants Are Employers Under The FLSA, The NCWHA Is Preempted By The FLSA And It Has No Application Here.

The North Carolina legislature has created a number of exemptions to its wage and hour statutory scheme. The first of these is that the North Carolina minimum wage and overtime requirements do not apply to "[a]ny person employed in an enterprise engaged in commerce or in the production of goods for commerce as defined in the Fair Labor Standards Act." N.C.G.S. § 95-25.14(a)(1). The North Carolina Supreme Court has confirmed that employers "covered by the FLSA are exempt from the state Wage and Hour Act." *See Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 353, 416 S.E.2d 166, 169 (1992) (citing N.C.G.S. § 95-25.14(a)(1)); *see also Spencer v. Hyde County*, 959 F. Supp. 721, 727-28 (E.D.N.C. 1997) ("The North Carolina Supreme Court has indicated that if a defendant is covered by the FLSA, it is exempt from the state statute."); *Martin v. Airborne Express*, 16 F. Supp. 2d 623, 629 (E.D.N.C. 1996) (holding that the FLSA governed employee's claim, that an exemption from the FLSA applied, and that the NCWHA did not apply because of the section 95-25.14(a)(1) exemption).

The Court's reasoning in *Spencer,* a case from this District, is instructive. The employer contended that it was a covered employer under the FLSA, and therefore the employees' state law claims under the NCWHA were preempted by the FLSA. *See Spencer*, 959 F. Supp. at 727. The employees argued that they were permitted to pursue their wage claims under state law until the employer admitted federal jurisdiction or established federal jurisdiction at trial. *Id.* The Court found that regardless of whether or not the employer conceded coverage, the FLSA clearly

covered the employer-employee relationship, and therefore the NCWHA claims were preempted under section 95-25.14. *Id.* at 728. Accordingly, summary judgment was granted in favor of the employer.

The present case is no different than *Spencer*. Hedrick expressly alleges in the Complaint that "Defendants are employers" engaged in commerce under the FLSA. ¶¶ 7, 8. Employees of "employers" covered by the FLSA have no rights under the NCWHA for overtime, regardless of whether the employer might also meet the definition of an employer engaged in commerce for purposes of the NCWHA. *See* N.C.G.S. § 95-25.14(a)(1); *Amos*, 331 N.C. at 353, 416 S.E.2d at 169. Thus, Hedrick's claim under the NCWHA is preempted, and he has no valid claim for overtime under the NCWHA for this reason alone.

> **B.  Even If The NCWHA Was Not Preempted, Hedrick Would Be Exempt From Any Overtime Entitlement Under Specific Provisions Of The NCWHA.**

Even if the NCWHA was not preempted, that statute contains its own exemptions, many of which are based on, and refer specifically to, exemptions contained within the FLSA. Two of these exemptions are virtually identical to the fishing enterprises and agricultural exemptions under the FLSA. Thus, even if the NCWHA did apply to Hedrick, which is not the case, he would not be entitled to overtime because of these exemptions.

> **1.  The Fishing Enterprises Exemption Under The NCWHA Would Apply To Hedrick And Preclude His Claims For Overtime.**

Section 95-25.14 of the NCWHA contains the following exemption from both the minimum wage and maximum hour requirements: "The provisions of G.S. 95-25.3 (Minimum Wage) and G.S. 95-25.4 (Overtime) . . . do not apply to . . . any person employed in the catching, processing, or first sale of seafood, *as defined under the Fair Labor Standards Act*; . . . ." N.C.G.S. 95-25.14(b)(2) (emphasis added). Though this language is more concise than that of the FLSA fishing enterprises exemption, it is closely modeled upon and comparable to section

213(a)(5) of the FLSA.  Because the NCWHA was "expressly modeled" upon the FLSA, similar exemptions should be construed similarly.  *See Chandler v. The Cheesecake Factory Restaurants, Inc.*, 239 F.R.D. 432, 435 (M.D.N.C. 2006) ("Since the NCWHA is expressly modeled after the FLSA, references to the FLSA are scattered throughout."); *see also Massie v. Board of Trustees*, 357 F. Supp. 2d 878, (W.D.N.C. 2005) (treating similarly worded section of the NCWHA regarding exempt professional employees as identical to the corresponding FLSA exemptions).  Here, the exemption under the NCWHA for "catching" and "processing" fish plainly applies to Hedrick, who expressly alleges that his job entailed "catching" and hauling tilapia for commercial purposes.

The language of the NCWHA fishing enterprise exemption set forth in § 95-25.14(b)(2) was clearly intended to encompass the same activities as the fishing enterprises exemption of the FLSA.  This is obvious based on the similarity of the language in the NCWHA exemption and its explicit reference to and incorporation of the terms of the FLSA.  Indeed, the NCWHA exemption applies to:  "Any person employed in the catching, processing or first sale of seafood, *as defined under the Fair Labor Standards Act.*"  *Id.*  The intent of the North Carolina legislature to incorporate the FLSA fishing enterprises exemption into the NCWHA exemption, but to use less words in drafting its own statutory provision, is clear based on:  (1) its use of the words "catching" and "processing" as a substitute for the more lengthy "catching, taking, propagating, harvesting, cultivating, or farming;" and (2) its use of the word "seafood" as a substitute for the more lengthy "fish, shellfish, crustacean, sponges, seaweeds, or other aquatic forms of animal and vegetable life."

Based on the facts alleged, the language of the NCWHA fishing enterprises exemption and its express incorporation of the FLSA, Hedrick would be exempt from any entitlement to

overtime under the NCWHA. For this reason as well, Hedrick's claim under that statute should be dismissed.

### 2. The Agricultural Workers Exemption Under The NCWHA Would Apply To Hedrick.

Hedrick's claim is also explicitly barred by the agricultural exemption under the NCWHA. Section 95-25.14 of the NCWHA contains the following exemption from minimum wage and maximum hour requirements: "The provisions of G.S. 95-25.3 (Minimum Wage) [and] G.S. 95-25.4 (Overtime) . . . do not apply to . . . any person employed in agriculture, as defined under the Fair Labor Standards Act; . . . ." N.C.G.S. 95-25.14(a)(2). This provision expressly adopts and incorporates the agricultural exemption under the FLSA, so that any person who is exempt under the FLSA would also be exempt under the NCWHA. Therefore, this overtime exemption fully applies to employees, such as Hedrick, who are employed in "fish farming activities." *See supra* pp. 7-8. For the same reasons that Hedrick was not entitled to overtime under the agricultural exemption of the FLSA, he would be similarly exempted under the NCWHA.

### III. Hedrick Cannot State A Claim For Wrongful Termination In Violation Of Public Policy.

In his Third Claim for Relief, Hedrick asserts a common law claim for wrongful termination in violation of the public policy of North Carolina. Hedrick bases his claim on the alleged "Public Policy articulated in North Carolina General Statute section 95-25.1" that "workers, including Plaintiff should be paid overtime for all work in excess of 40 hours per week," as reflected in the NCWHA. ¶¶ 52-53. Hedrick alleges that he complained about not being paid overtime and he was terminated "because he reported wage and hours violations to the human resources department . . . ." ¶ 60. Hedrick claims that his termination therefore "constituted a wrongful discharge in violation of the express public policy declarations contained

in North Carolina General Statute section 95-25.1(b)." ¶ 60.

Hedrick's claim for wrongful discharge fails because it is based entirely on the assumption that he was terminated for attempting to protect a right guaranteed to him by the statutes of North Carolina – the right to overtime. Hedrick's claim, however, is based on a false premise. Hedrick had no right whatsoever to overtime under North Carolina law; there was therefore no North Carolina public policy implicated here; and his claim for wrongful discharge has no legal basis.

### A. A Claim For Wrongful Termination Must Allege A Violation Of A Clearly Expressed Public Policy, As Set Forth In The General Statutes Or State Constitution.

North Carolina recognizes a narrow exception to the doctrine of employment at will. "[W]hile there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy." *See Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 175, 381 S.E.2d 445, 447 (N.C. 1989) (citing *Sides v. Duke University*, 74 N.C. App. 331, 342, 328 S.E. 2d 818, 826 (1985)). In North Carolina, "public policy" is defined "'as the principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or against public good.'" *Amos*, 331 N.C. at 352, 416 S.E.2d at 168 (quoting *Coman*, 325 N.C. at 175 n.2, 381 S.E.2d at 447 n.2). "Although the definition of 'public policy' approved by [the North Carolina Supreme Court] does not include a laundry list of what is or is not 'injurious to the public or against the public good,' at the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes." *Amos,* 331 N.C. at 353, 416 S.E.2d at 169. As the law of wrongful termination has developed, the North Carolina courts have further refined the parameters of the tort: "The public policy exception . . . is applicable where (1) the public policy of North

Carolina is clearly expressed within our general statutes or state constitution, or (2) potential harm to the public is created by defendant's unlawful actions." *McDonnell v. Tradewind Airlines, Inc.*, 670 S.E.2d 302, 306 (N.C. Ct. App. 2009) (citing *Garner v. Rentenbach Constructors, Inc.*, 129 N.C. App. 624, 628, 501 S.E.2d 83, 86 (1998); *Considine v. Compass Group USA, Inc.*, 145 N.C. App. 314, 321, 551 S.E.2d 179, 184 (2001); *Amos*, 331 N.C. at 353, 416 S.E.2d at 169).

Here, Hedrick makes clear that his wrongful termination claim rests on the public policy entitling employees to overtime, as expressed in the NCWHA. The fatal problem with Hedrick's claim, however, is that the NCWHA has no application here whatsoever. Thus, Hedrick has no legal right to the benefit he was claiming – overtime. Accordingly, Hedrick has not identified a public policy that protects the conduct for which he claims he was terminated, and his wrongful termination claim must fail.

    **B.    Because The NCWHA Expressly Permitted Defendants To Not Pay Hedrick Overtime, They Have Not Offended North Carolina Public Policy In Any Manner.**

Hedrick alleges Defendants violated the public policy by terminating him for complaining about his right to be paid overtime under the NCWHA. Defendants do not dispute that an employee could state a claim for wrongful discharge if he was terminated in *violation* of the NCWHA. In this case, however, as discussed above, Hedrick's employment is completely exempt from the overtime requirements of the NCWHA. *See* N.C.G.S. §§ 95-25.14(a)(1), (a)(2), and (b)(2). Thus, based on the allegations of the Complaint, Defendants violated no law and no public policy. It is simply not a violation of public policy for an employer to fail to pay overtime when the law does not require overtime, or to discharge an employee who complains for four years about not receiving benefits to which he is not entitled. *See, e.g., Jarman v. Deason*, 173 N.C. App. 297, 308-09, 618 S.E. 776, 783-84 (N.C. Ct. App. 2005) (refusing to recognize a

claim for wrongful discharge based on age discrimination against an employer exempted from the North Carolina statute's coverage by virtue of its small size); *Garland v. Hatley*, No. COA04-1131, 2005 N.C. App. LEXIS 1737, at *5-11 (N.C. Ct. App. Aug. 16, 2005) (holding that the plaintiff could not present evidence of a public policy exception to the doctrine of at will employment based on a violation of the Family and Medical Leave Act ("FMLA") because the employee fell within an exemption under the FMLA, and thus could not establish a violation of the statute). Hedrick's Complaint therefore fails to state a claim for wrongful termination under North Carolina law.

## IV. Hedrick Cannot State A Claim For Punitive Damages Under Section 1D Of The North Carolina General Statutes

Hedrick's Fourth Claim for Relief asserts that he is entitled to punitive damages under chapter 1D of the North Carolina General Statutes, which provides for punitive damages to punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts. *See* N.C.G.S. § 1D-1. Punitive damages as authorized by this chapter, however, must be based on a statutory or a common law right of action or in equity. *See* N.C.G.S. § 1D-10. This claim cannot stand alone. For this reason, Hedrick cannot state a claim for punitive damages under North Carolina law.

## CONCLUSION

For each of the foregoing reasons, Defendants request that the Complaint be dismissed and that they be awarded their attorney's fees and expenses incurred in pursuing this motion.

Respectfully submitted this the 1st day of February, 2010.

                TROUTMAN SANDERS LLP

                By: /s/ Hannah G. Styron
                    Hannah G. Styron
                N.C. State Bar No.: 28824
                Two Hannover Square
                434 Fayetteville Street, Suite 1900
                Raleigh, NC 27601
                Telephone: (919) 835-4119
                Facsimile: (919) 829-8716

                David E. Constine, III, VSB No. 23223
                Rebecca E. Ivey, VSB No. 76873
                Post Office Box 1122
                Richmond, Virginia 23218-1122
                Telephone: (804) 697-1200
                Facsimile: (804) 697-1339

                *Counsel for Defendants Southern States Cooperative, Inc. and Melvin Goad.*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>Lee W. Bettis, Jr.
>Raymond Earl Dunn, Jr.
>EMANUEL & DUNN, PLLC
>3230 Country Club Road
>New Bern, North Carolina 28582
>Telephone: 252-633-3800
>Fax: 252-633-6669
>Email: lwbettis@hotmail.com
>Email: rdunn@emanuelanddunn.com

This the 1st day of February, 2010.

>By: /s/ Hannah G. Styron
>Hannah G. Styron
>Troutman Sanders LLP
>Two Hannover Square
>434 Fayetteville Street, Suite 1900
>Raleigh, NC 27601
>Telephone: (919) 835-4119
>Facsimile: (919) 829-8716