IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | | |
|---|---|---|
| RYAN L. HEDRICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No: 4:10-CV-00012 |
| | ) | |
| SOUTHERN STATES COOPERATIVE, INC. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MELVIN GOAD | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS**

Defendants Southern States Cooperative, Inc. ("Southern States") and Melvin Goad (collectively "Defendants") hereby submit this reply memorandum in support of their Motion to Dismiss.

In his Opposition ("Opp."), Plaintiff Ryan L. Hedrick ("Hedrick") asks this Court to disregard the plain language of the fishing enterprises and agricultural exemptions under the Fair Labor Standards Act ("FLSA") and deny Defendants' motion. Hedrick contends that the Court should ignore the plain language of the statute and the regulations, which expressly state that fish farming activities are exempt from the overtime requirements of the FLSA, and instead somehow divine that the legislature intended the opposite result. The facts alleged, however, in both the initial and the Amended Complaints clearly demonstrate that Hedrick's employment was covered under the relevant exemptions. In the initial Complaint, Hedrick repeatedly alleged that he was employed to grow tilapia on a "fish farm" operated by Southern States. Compl., ¶¶ 10, 12 and 14-17. In the Amended Complaint, Hedrick concedes that he operated a "fish farm" for Southern States throughout his employment. Am. Compl., ¶¶ 12, 16 and 24. Indeed, Hedrick expressly pleads that his primary responsibility was "growing the tilapia." Am. Compl., ¶ 26.

Hedrick, by his own allegations, has pled himself squarely into the exemptions under the FLSA. Hedrick also concedes that his claim under the North Carolina Wage and Hour Act ("NCWHA") is governed by the FLSA. Accordingly, the NCWH claim also fails. Finally, Hedrick does not offer any authority to rebut the well established principle under North Carolina law that a claim for wrongful discharge cannot stand when the alleged violation of "public policy" was completely lawful. Here, Hedrick cannot assert a valid claim of wrongful discharge based on the exercise of a "right" (i.e., the alleged right to be paid overtime) that did not exist.

## ARGUMENTS

### I. Hedrick Has Pled Ample Facts For The Court To Determine That The FLSA Exemptions Apply.

In an effort to avoid dismissal, Hedrick implies that the Court should not grant Defendants' motion because it is based on two FLSA exemptions that are in the nature of affirmative defenses. Hedrick contends that the applicability of an FLSA exemption, by definition, is a fact intensive inquiry that cannot be determined on a motion to dismiss. Hedrick, however, has pled allegations of fact that place him squarely in the jaws of the exemptions at issue, thereby hoisting himself on his own petard. Indeed, even the cases Hedrick cites recognize that a Rule 12(b)(6) motion may be granted based on an affirmative defense, "if it clearly appears on the face of the complaint." *Richmond, Fredericksburg & Potomac F. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993); 5A Charles A. Wright & Arthur R. Miller, *Fed. Practice and Proc*. § 1357, at 348-49 (2d ed. 1990) ("The complaint also is subject to dismissal under Rule 12(b)(6) when its allegations indicate the existence of an affirmative defense, but the defense clearly must appear on the face of the pleading.").

The language in *Robbins v. Zabarsky*, 44 F. Supp. 867, 869-70 (D. Mass. 1942), where the court applied an FLSA exemption in granting a motion to dismiss, is particularly instructive. The court, citing abundant authority, held that a failure to state a claim, "may be due to setting up too many facts as well as too few." *Id.* (citations omitted). Indeed, the court stated that, "if facts are alleged in the complaint which made it possible to determine whether the exemption applied,

the legal question of applicability of the exemption may be determined on a motion to dismiss." *Id*. at 870. The court granted the motion because "[t]he plaintiff's description of his job [was] sufficiently minute to give an ordinary person a clear impression of the nature of his duties." *Id.*

The facts alleged in this case fall easily within the above standard. Whether the Court relies on the allegations in the Complaint or the Amended Complaint, they are replete with references to Hedrick operating a "fish farm," grow[ing] the tilapia," "catching and hauling fish" and "loading" fish. *See, e.g.,* Compl., ¶¶ 10, 12, 14-17; Am. Compl., ¶¶ 12, 16, 17, 24 and 26. These allegations truly need no further explanation. Instead, this Court need simply apply the plain language of the statute and its regulations to the factual allegations to find that Hedrick was exempt from the overtime requirements of the FLSA.[1]

## II. Hedrick Cannot State A Claim Under The FLSA.

### A. The Fishing Enterprises Exemption Applies To Hedrick.

Hedrick's primary argument to avoid the application of the fishing enterprises exemption is that it does not apply to an "automated fish production facility." Hedrick, however, offers no authority for this position, and he completely ignores that the nature of his job, as *alleged* in the Complaint and Amended Complaint, falls plainly within the express language of the exemption. A Court need not divine the legislative intent behind an exemption when the statutory language is unambiguous. Indeed, "[t]he meaning of the statute must in the first instance at least be sought in its language, and if that is plain and the Act is constitutional, the sole function of the court is to enforce it." *Fleming v. Hawkeye Pearl Button Co.*, 113 F.2d 52, 55 (8th Cir. 1940); *see Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982) (quoting *United States v. Am. Trucking Ass'ns, Inc.*, 310 U.S. 534, 543 (1940)) ("There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes."). Here, the plain language of the fishing enterprises exemption states that employees

---

[1] Plaintiff argues that his conclusory allegations in ¶¶ 20 and 23 of the Complaint (asserting that he was not exempt) rescue his claim. These allegations are ones of law, not fact, and they have no bearing on the instant motion. *See, e.g., U.M.W. of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir. 1979) (court is not bound to accept conclusory allegations regarding the legal effect of the facts alleged).

who catch, take, propagate, harvest, cultivate or farm fish are not entitled to overtime. *See* 29 U.S.C. § 213(a)(5) ("The provisions . . . shall not apply with respect to . . . any employee employed in the catching, taking, propagating, harvesting, cultivating, or farming of any kind of fish, shellfish, crustacean, sponges, seaweeds, or other aquatic forms of animal and vegetable life, . . ."). Hedrick pled that his job was to catch, grow and farm fish on two fish farms. Compl., ¶¶ 10, 12, 14-17; Am. Compl., ¶¶ 12, 16, 17, 24 and 26. The language of the statute is plain, the facts pled are unambiguous, and the Court should apply the exemption as written.

Even if the Court examines the legislative intent, it is clear that the intent of the statute is for courts to apply the exemption on a functional basis. In other words, the intent of the exemption is that if an employee engages in the enumerated activities upon the enumerated products, he is exempt. *See* 29 C.F.R. § 784.105 ("From this legislative history the intent is apparent that the application of these exemptions under the Act as amended in 1961 is to be determined by the practical and functional relationship of the employee's work to the performance of *the operations specifically named* in section 13(a)(5) . . . .") (emphasis added); 29 C.F.R. § 784.107 ("Thus the operations described in section 13(a)(5) must be performed *with respect to 'any kind of fish*, shellfish, crustacean, sponges, seaweeds, or other aquatic forms of animal and vegetable life.' . . . Employees engaged in the *named operations*, such a[s] catching or taking, *are clearly exempt*.") (emphases added). Accordingly, the exemption covers the enumerated activities – catching, taking, propagating, harvesting, cultivating or farming – wherever performed, as long as those activities are performed on the specified products, including fish. This functional analysis triggers the application of the exemption and is consistent with the legislative intent, as explained by the pertinent regulation: "[t]he 1961 amendments, however, left employees employed in . . . fish farming . . . under the existing exemption . . . ." 29 C.F.R. § 784.102. Thus, the intent of the fishing enterprises exemptions, as reflected in the regulations, requires its application here.

In a further effort to avoid the plain meaning of the statute, Hedrick argues that the exemption is subject to a distinction between "off shore" and "on shore" fishing activities. The

notion that the exemption applies only when employees are "at sea," however, is applicable only to the second clause of the statute:

> The provisions . . . shall not apply with respect to [(1)] . . . any employee employed in the catching, taking, propagating, harvesting, cultivating, or farming of any kind of fish, shellfish, crustacean, sponges, seaweeds, or other aquatic forms of animal and vegetable life, *or* [(2)] in the first processing, canning or packing such marine products *at sea* as an incident to, or in conjunction with, such fishing operations, . . . .

29 U.S.C. § 213(a)(5) (emphasis added). Thus, the "at sea" requirement applies only to the "first processing, canning, or packing" of marine products.

Hedrick also argues that this Court should ignore the plain language of the statute and deny the motion because the fishing enterprise exemption was intended to apply only to those activities in the fishing industry that are affected by "natural factors or elements," such as the "changeable conditions of the water" and the "perishability of the products." Opp. at 10. This argument gets Hedrick nowhere. What could possibly be *more* affected by "natural factors" than *growing and farming* fish? Fish, by their very nature, are perishable products, and the activities allegedly engaged in by Hedrick, such as raising the fish from "fry" to "fingerlings" and otherwise "growing the tilapia," are the essence of an activity affected by "natural factors." It is difficult to imagine anything *more* affected by "natural factors" than growing a living creature.

Even in an automated, mechanized, indoor environment, the cultivation, propagation, catching and farming of fish necessarily is affected by natural factors. The "natural factors" enumerated in the pertinent regulation include "the vicissitudes of the weather, the changeable conditions of the water, the run of the catch, and the perishability of the products obtained." 29 C.F.R. § 784.118. Even if the fish tanks upon which Hedrick worked were shielded from the weather, and even if automated processes were used, other natural factors remain: water conditions change because aquatic life inhabits the water; fish act unpredictably; and fish are undeniably perishable products. Hedrick's work involved natural, biological products – fish – and despite steps taken to control the natural variability of environmental factors, the variability of the live biological component remained. Moreover, the regulations confirm this analysis:

- 5 -
Case 4:10-cv-00012-JG   Document 20   Filed 04/08/10   Page 5 of 11

"The various activities enumerated in section 13(a)(5) – the catching, taking, propagating, harvesting, cultivating, or farming of aquatic forms of animal or vegetable life as well as 'the going to and returning from work' *are* materially controlled and affected by the *natural elements*." 29 C.F.R. § 784.119 (emphasis added).

The sole case cited by Hedrick to support his position is *Fleming v. Hawkeye Pearl Button Co.,* 113 F.2d 52 (8th Cir. 1940). Opp. at 10-11. *Fleming,* however, offers nothing supportive. *Fleming* simply confirmed that the exemption was intended to apply to activities affected by "natural factors" and things "not within human control." *Id*. at 56. But, in that case, the employees were simply engaged in the production of *buttons* manufactured from clam shells, and were not in any way associated with catching, harvesting, cultivating or farming any sort of *live* marine life. *Id.* at 54. Thus, the exemption was obviously not applicable in *Fleming*.

Finally, Hedrick's argument that the fishing enterprises exemption cannot apply to an "automated fish production facility" also flies in the face of Supreme Court authority. In *Maneja v. Waialua Agricultural Co.*, 349 U.S. 254, 262 (1955), the Court held "[t]here is no reason to construe the FLSA so as to discourage modernization in performing this *same function*" as the activities covered by an exemption. In the instant case, the *function* of propagating, cultivating, catching and farming live fish remains fully intact regardless of whether the fish are grown indoors and fed by a machine. Attempting to characterize the farming of fish as equivalent to manufacturing inanimate widgets is fanciful, and it cannot change the facts that Hedrick grew and cultivated live fish on a fish farm. Based on the facts alleged, Hedrick's job plainly falls within the fishing enterprises exemption and his case should be dismissed for this reason alone.

**B.     The Agriculture Exemption Also Applies To Hedrick.**

In regard to the agriculture exemption, Hedrick argues that fish farming is neither included in the primary meaning nor the secondary meaning of "agriculture,"[2] and therefore it

---

[2] The agriculture exemption has two branches: "(1) a primary meaning which includes farming in all its branches . . . , and (2) a secondary meaning which includes other farm practices, but only if they are performed by a farmer or on a farm." *Hodgson v. Idaho Trout Processors Co.*, 497 F.2d 58, 59 (9th Cir. 1974) (citing *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755 (1949)).

does not apply to his employment. Hedrick's argument is unsupported by the law. As the Supreme Court has recognized, "[t]he [agriculture] exemption was meant to embrace the whole field of agriculture, and sponsors of the legislation so stated. This Court also has had occasion to comment on its broad coverage." *Maneja*, 349 U.S. at 260 (citing 81 Cong. Rec. 7648, 7658; *Addison v. Holly Hill Co.*, 322 U.S. 607, 612 (1944)). Indeed, the Code of Federal Regulations, which has the force of law, expressly states that "fish farming" activities fall within the primary meaning of agriculture because it is one branch of "farming in all its branches." *See* 29 C.F.R. §§ 780.109, 780.120; 29 U.S.C. *See also* 29 U.S.C. §§ 213(b)(12), 203(f); *Domsea Farms, Inc.*, 211 N.L.R.B. 832, 833 (NLRB 1974) (holding that employees on a commercial fish farm were agricultural laborers subject to an exemption).

In an effort to avoid the unassailable law, Hedrick claims that "[b]y the plain and unambiguous definition of agriculture in the FLSA, fish farming is not included under the primary meaning of agriculture" because fish farming is not "specifically" listed in 29 U.S.C. § 203(f). Opp. at 13. Section 203(f), which defines the primary meaning of agriculture, states, in pertinent part, as follows:

> "Agriculture" includes farming in all its branches *and among other things* includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities . . ., the raising of livestock, bees, fur-bearing animals, or poultry, . . . .

29 U.S.C. § 203(f) (emphasis added). Thus, the statute contemplates that "other things" not enumerated will fall within the primary meaning of agriculture, and the regulations verify that "[t]he language 'farming in all its branches' includes all activities, *whether listed in the definition or not*, which constitute farming or a branch thereof . . . ." 29 C.F.R. § 780.107 (emphasis added). The Code of Federal Regulations then confirms that "fish farming activities fall within the scope of the meaning of 'farming in all its branches and employees engaged in such operations *would be* employed in agriculture.'" 29 C.F.R. § 780.109 (emphasis added).

The sole case Hedrick cites to bolster his incorrect reading of the FLSA does not support his argument. Hedrick contends that *Hodgson v. Idaho Trout Processors Co.,* 497 F.2d 58, 59

(9th Cir. 1974), stands for the proposition that fish farming does not fall within the primary or secondary meaning of agriculture. Opp. at 13. Ironically, *Hodgson* stands for the *opposite* conclusion. In *Hodgson,* the plaintiff employees did *not* work on a fish farm; instead, they processed fish received from fish farms. In refusing to apply the agriculture exemption, the *Hodgson* court found that "[the employees'] labors are confined to the processing plant and *not to the actual raising of the trout. . . .* The activities of Trout Processors' employees do not fall within the primary meaning because they do not consist of any of the elemental farming operations set forth in section 3(f) of the Act. *The employees neither cultivate nor raise anything; their labor consists solely of processing.*" *Id.* at 59-60 (emphasis added). Thus, *Hodgson* distinguished between processing fish and raising fish, which favors Defendants here.

      Hedrick also incorrectly contends that Defendants' motion is not appropriate because the statute and regulations are somehow ambiguous as to whether fish farming falls within the agriculture exemption. Hedrick insists the regulations require a fact intensive analysis because a 1965 Department of Labor interpretive bulletin implied that fish farming "may" fall within the meaning of "farming in all its branches."[3] Opp. at 14. As Hedrick concedes, however, "[t]he interpretive bulletin later became 29 C.F.R. 780.109." *Id.* This regulation completely guts Hedrick's position, as it makes unmistakeably clear that "fish farming activities fall within the scope of 'farming in all its branches'" and employees engaged in such activities "would be" exempt. 29 C.F.R. 780.109. Again, this regulation has the full force of the law. *See Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843 (1984) ("a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency"); *Miller Hatcheries, Inc. v. Boyer*, 131 F.2d 283, 286 (8th Cir. 1942).

      In the end, the gist of Hedrick's argument is that "high tech fish production facilities" cannot possibly constitute "agriculture" because they are "more akin to production line

---

[3] Hedrick also argues that 29 C.F.R. 780.120 "expressly rejects" a mechanical application of the express endorsement in 29 C.F.R. 780.109 of "fish farming" as included in "farming in all its branches." Hedrick overstates the language of the regulation. Opp. at 15. Section 29 C.F.R. 780.120 uses the word "may," but in a permissive sense (i.e., as "is allowed"), not a restrictive one.

manufacturing operations." Opp. at 14-16.[4] This argument is contrary to law, as the regulations and case law demonstrate:

> The section 13(b)(12) exemption for employment in agriculture is intended to cover all agriculture, *including 'extraordinary methods' of agriculture as well as the more conventional ones* and large operators as well as small ones.

29 C.F.R. § 780.402 (emphasis added); *see also Maneja*, 349 U.S. at 260. Hedrick cannot possibly contend that the growing, cultivating and raising of live creatures is more akin to manufacturing than agriculture, and he cites no case law to support such a conclusion. Hedrick pled that he caught, grew, hauled and farmed fish on two *fish farms*. The mere fact that certain aspects of the work are mechanical and automated does not change the general character of the work – growing fish.[5]

Section 780.106 of the Code of Federal Regulations is titled "[e]mployment in 'primary' agriculture is farming regardless of why or where work is performed," and also negates Hedrick's position:

> It is also immaterial whether the agricultural or horticultural commodities are grown in enclosed houses, as in greenhouses or mushroom cellars, or in an open field. Similarly, the mere fact that production takes place in a city or on industrial premises, such as in hatcheries, rather than in the country or on premises possessing the normal characteristics of a farm makes no difference.

29 C.F.R. § 780.106. Furthermore the Supreme Court in *Maneja* made clear that the mechanization of agricultural processes does not affect the application of the exemption, stating: "[n]owhere in the Act was any attempt made to draw a distinction between large and small farms or between mechanized and nonmechanized agriculture." *Maneja*, 349 U.S. at 261.

Based on the facts alleged, both the fishing enterprises and agriculture exemptions are fully applicable in this case.

## II. Hedrick Cannot State A Claim For Wrongful Termination.

In obvious recognition of the fact that his wrongful termination claim rises and falls

---

[4] Hedrick's argument would effectively create an exception that swallows the rule of the exemption, as many greenhouses, dairies, hatcheries, feedlots and stockyards involve "high tech," automated processes.
[5] Hedrick notes that a farmer who operates a factory on a farm, even one using the raw materials which he grows, would not render the activity a farming operation. *See* 29 C.F.R. § 780.146. This argument has no relevance. A fish farm actually *cultivates* the raw agricultural material – fish – and is not a factory.

based on the application of the FLSA exemptions, Hedrick devotes barely one page of his memorandum to this claim. Opp. at 17-18. Hedrick argues that "[t]he mere fact that North Carolina incorporates exemptions contained in the FLSA does not preclude North Carolina from articulating its public policy that 'the wage levels of employees, hours of labor, and the payment of earned wages . . . are subjects of concern . . . .'" Opp. at 18 (citing N.C.G.S. § 95-25.1). Hedrick does not identify, however, any public policy that could have been violated here because the law does not protect the right he was allegedly asserting. Indeed, under the NCWHA, which (as Hedrick concedes) incorporates the pertinent exemptions under the FLSA, Defendants were expressly permitted to *not* pay Hedrick overtime. *See* N.C.G.S. §§ 95-25.14(a)(1), (a)(2), and (b)(2). Accordingly, since there is no violation of the laws enacted pursuant to the statement of public policy, there can be no violation of public policy. *See, e.g., Jarman v. Deason*, 173 N.C. App. 297, 308-09, 618 S.E. 776, 783-84 (N.C. Ct. App. 2005) (refusing to recognize a claim for wrongful discharge against an employer exempted from statutory coverage); *Garland v. Hatley*, No. COA04-1131, 2005 N.C. App. LEXIS 1737, at *5-11 (N.C. Ct. App. Aug. 16, 2005) (holding that because the employee fell within an exemption under the FMLA, there was no violation of the statute and thus no wrongful termination). For this reason, Hedrick fails to state a claim for wrongful termination under North Carolina law.

## CONCLUSION

For each of the foregoing reasons, Defendants request that the Complaint be dismissed.

This the 8th day of April, 2010.

TROUTMAN SANDERS LLP


By: /s/ Hannah G. Styron
    Hannah G. Styron
N.C. State Bar No.: 28824
Two Hannover Square
434 Fayetteville Street, Suite 1900
Raleigh, NC 27601
Telephone: (919) 835-4119
Facsimile: (919) 829-8716
hannah.styron@troutmansanders.com

David E. Constine, III, VSB No. 23223
Rebecca E. Ivey, VSB No. 76873
Post Office Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing Reply Memorandum in Support of Defendants' Rule 12(b)(6) Motion to Dismiss of Defendant Southern States Cooperative, Inc. and Melvin Goad was filed electronically with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to the following:

>  Lee W. Bettis, Jr.
>  Raymond Earl Dunn, Jr.
>  EMANUEL & DUNN, PLLC
>  3230 Country Club Road
>  New Bern, North Carolina 28582
>  Email: lwbettis@hotmail.com
>  Email: rdunn@emanuelanddunn.com

This the 8th day of April, 2010.

>  By: /s/ Hannah G. Styron
>  Hannah G. Styron
>  Troutman Sanders LLP
>  Two Hannover Square
>  434 Fayetteville St., Suite 1900
>  Raleigh, NC 27601
>  Telephone: (919) 835-4100
>  Facsimile: (919) 835-4101
>  hannah.styron@troutmansanders.com