IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:10-CV-12-JG

| RYAN L. HEDRICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) | **ORDER** |
| | ) |
| SOUTHERN STATES COOPERATIVE, | ) |
| INC., MELVIN GOAD, | ) |
| | ) |
| Defendants. | ) |

This case comes before the court on two motions: a motion (D.E. 4) by defendants Southern

States Cooperative, Inc. ("Southern States") and Melvin Goad ("Goad") (collectively "defendants")

to dismiss the case for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6); and a motion

(D.E. 12) by plaintiff Ryan L. Hedrick ("plaintiff") to amend the complaint, pursuant to Fed. R. Civ.

P. 15(a)(2). Both motions have been fully briefed.[1]  For the reasons set forth below, defendants'

motion to dismiss will be allowed, and plaintiff's motion to amend will be denied.

## BACKGROUND

## I.    CASE HISTORY

Plaintiff commenced this action on 30 December 2009 in Beaufort County Superior Court.

(*See* Compl. (D.E. 1-1)).[2]  On 28 January 2010, defendants removed the case to this court pursuant

---

[1] Defendants filed a memorandum (D.E. 5) in support of their motion, plaintiff filed a response (D.E. 14) in opposition, and defendants filed a reply (D.E. 20). Plaintiff filed a proposed amended complaint (D.E. 12-1) and a memorandum (D.E. 13) in support of his motion, defendants filed a memorandum (D.E. 21) in opposition, and plaintiff filed a reply (D.E. 23).

[2] Defendants have attached two copies of the complaint to their notice of removal: the copy served on Southern States (D.E. 1-1) and the copy served on Goad (D.E. 1-2). It appears that the copies are identical. All references to the complaint in this order will be to the copy that appears at D.E. 1-1.

to the court's diversity jurisdiction under 28 U.S.C. § 1332(a)(1). (*See* Notice of Removal (D.E. 1) ¶ 11).

Following removal, defendants filed their motion to dismiss. Plaintiff filed his motion to amend more than a month after the dismissal motion was filed.

## II.    FACTUAL ALLEGATIONS[3]

In February 2002, plaintiff was hired by Southern States as an "Aquaculture Facility Specialist" to grow tilapia fish on a fish farm near Washington, North Carolina. (Compl. ¶ 10). Plaintiff's employment terminated on 3 June 2009. (*Id.* ¶ 11). Goad was plaintiff's direct supervisor (*Id.* ¶ 13). In his position, plaintiff "performed a wide range of duties including; physical labor, cleaning the farm, heavy lifting, pipe fitting, catching and hauling fish from tanks, electrical work, and other manual labor." (*Id.* ¶ 14). "Plaintiff was not customarily and regularly engaged in making sales or obtaining orders or contracts for services away from Defendants' place or places of business." (*Id.* ¶ 19).

Plaintiff operated one fish farm for defendants until 2005, when he began operating a second fish farm "performing essentially the same duties." (*Id.* ¶ 15). He did not receive additional compensation for operating the second farm. (*Id.*). After he began operating the second fish farm, plaintiff demanded that defendants pay him overtime because he was working over 60 hours per week and on weekends and holidays. (*Id.* ¶ 16). In response, Goad told plaintiff that he "was required to work more than 40 hours a week without overtime" and that "he [Goad] had terminated people for asking for overtime." (*Id.* ¶ 18). Thereafter, Goad became "hostile and threatening." (*Id.*

---

[3] This summary reflects the principles set out in the section below that the allegations must generally be viewed favorably toward plaintiff.

2

¶ 27). When plaintiff continued to request that he be paid overtime, he was told by Goad that he "would be terminated if he continued to ask for overtime compensation." (*Id.* ¶ 29). After plaintiff reported Goad to human resources in July 2007, Goad began treating plaintiff "more menacingly." (*Id.* ¶ 30). On or about 3 June 2009, Goad terminated plaintiff, telling him that "it was a bad move to complain to human resources." (*Id.* ¶ 31).

In the complaint, plaintiff asserts four claims: failure to pay overtime compensation for overtime hours worked between June 2005 and June 2009 in violation of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, et seq. (Compl. ¶¶ 37-43); failure to pay overtime compensation for overtime hours worked between June 2005 and June 2009 in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. (Compl. ¶¶ 44-50); wrongful termination in retaliation for complaining of the failure to pay overtime compensation under the NCWHA in violation of the public policy of North Carolina (Compl. ¶¶ 51-61); and imposition of punitive damages for willful, wanton, and malicious conduct against plaintiff in discharging him and threatening him physically, pursuant to N.C. Gen. Stat. § 1D-1, et seq. (Compl. ¶¶ 62-65). Plaintiff seeks compensatory damages, liquidated damages, punitive damages, attorneys' fees, and other relief. (*Id.* ¶¶ 62-65; pp. 9-10).

## DEFENDANTS' MOTION TO DISMISS

The court will address first defendants' motion to dismiss and then plaintiff's motion to amend. Determinations reached by the court regarding the original complaint in evaluating the dismissal motion will necessarily be subject to its evaluation of the proposed amended complaint, which could conceivably remedy any deficiencies found. Indeed, plaintiff candidly acknowledges that "[t]he sole purpose of the Amended Complaint was to include facts which are required to be

3

addressed by the Court when considering the affirmative defenses that Defendants raise in their motion to dismiss." (Pl.'s Resp. 2).

As indicated, defendants seek dismissal of each of plaintiff's four claims. The court will address each claim in turn and the grounds upon which defendants seek its dismissal after reviewing the standard for dismissal under Rule 12(b)(6).

## I. RULE 12(b)(6) STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Ordinarily, the complaint need contain simply "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a complaint is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *See Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007) (internal quotation marks omitted)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible if the plaintiff alleges factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and shows more than "a sheer possibility that a defendant has acted unlawfully." *Id; see also Nemet Chevrolet, Ltd. v.*

4

*Consumeraffairs.com, Inc.*, 591 F.3d 250 255-56 (4th Cir. 2009) (discussing and applying the "plausibility" standard under *Iqbal*).

Ordinarily, the existence of an affirmative defense will not support a Rule 12(b)(6) motion, in part, because a plaintiff is not required to negate affirmative defenses in his complaint. *Fortner v. Thomas*, 981 F.2d 1024, 1028 (11th Cir. 1993); *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). But a court may grant a motion to dismiss on the basis of an affirmative defense where "all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).

In analyzing a Rule 12(b)(6) motion, a court must accept as true all well-pleaded allegations of the challenged complaint and view those allegations in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *see also Lambeth v. Bd. of Comm'rs*, 407 F.3d 266, 268 (4th Cir. 2005) (court must accept as true all factual allegations of the complaint). All reasonable factual inferences from the allegations must be drawn in the plaintiff's favor. *Edwards*, 178 F.3d at 244. However, bare assertions of legal conclusions or formulaic recitations of the elements of a claim are not entitled to be assumed true. *Iqbal*, 129 S. Ct. at 1951.

The court has the discretion to grant a motion to dismiss under Rule 12(b)(6) with or without prejudice. *St. Clair v. Banker Steel Co., LLC*, No. 6:06CV42, 2007 WL 45785, at *3 (W.D. Va. 5 Jan. 2007) (dismissing plaintiff's complaint without prejudice and granting plaintiff leave to file an amended complaint correcting deficiencies). Ordinarily, where a defect in the complaint is curable, the court should grant the dismissal without prejudice. *Cloaninger v. McDevitt*, No. 106CV135,

5

2006 WL 2570586, at *6-9 (W.D.N.C. 3 Sept. 2006) (granting motion to dismiss without prejudice and granting plaintiff leave to amend to accurately assert the dismissed claims); *Threat v. Potter*, No. 3:05CV116, 2006 WL 1582393, at *1 (W.D.N.C. 2 June 2006) ("However, in its discretion, the Court finds that allowing the Plaintiff to amend her Complaint to correct these deficiencies is a wiser course than to order a dismissal at this early stage of the action. The Plaintiff is allowed ten days to amend her Complaint. Depending on the nature of any deficiencies in the Amended Complaint, the Defendant may bring this motion again, if warranted."); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003) ("'[L]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect.'") (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988)).

## II. FLSA CLAIM

The FLSA requires that employers whose employees are "employed in an enterprise engaged in commerce or in the production of goods for commerce" pay such employees one and one-half times their regular rate of pay for each hour above 40 hours worked in a work week. 29 U.S.C. § 207(a)(1). The FLSA contains various exemptions from the overtime requirements. *See* 29 U.S.C. § 213. The exemptions are to be narrowly construed against the employer asserting them, and the employer has the burden of proving that an exemption applies. *See, e.g., A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945); *Clark v. J.M. Benson Co., Inc.*, 789 F.2d 282, 286 (4th Cir. 1986) ("'[T]he general rule [is] that the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof.'") (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974)); *see also* 29 C.F.R. § 784.21 ("An employer who claims an exemption under the Act has the burden of showing that it applies.").

6

Defendants contend that plaintiff's FLSA claim fails because the work he performed, operation of a fish farm, falls within two overtime exemptions under the FLSA—one for agriculture and the other for fishing. Because these exemptions constitute affirmative defenses for which defendants have the burden of proof, dismissal based on them is proper only if all facts necessary to them clearly appear on the face of plaintiff's complaint.[4]

## A. Agriculture Exemption

Turning first to the agriculture exemption under 29 U.S.C. § 213(b)(12), it applies to "any employee employed in agriculture." 29 U.S.C. § 213(b)(12). The FLSA, in turn, defines "agriculture" broadly to "to embrace the whole field of agriculture." *Maneja v. Waialua Agr. Co.*, 349 U.S. 254, 260 (1955); 29 U.S.C. § 203(f) (FLSA § 3(f)). The definition reads:

> "Agriculture" includes *farming in all its branches* and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 1141j(g) of Title 12), the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.

29 U.S.C. § 203(f) (emphasis added).

Thus, as the United States Supreme Court has recognized, the definition has two aspects. *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 762 (1949). The primary meaning includes "farming in all its branches," which includes certain specified practices. *Id.* The second, broader meaning includes "any practices, whether or not themselves farming practices, which are

---

[4] Although plaintiff alleges that he is not exempt under the FLSA or the NCWHA (*see* Compl. ¶¶ 20, 23), these allegations of legal conclusions are not entitled to be treated as true, as indicated, and they do not preclude the court from considering the applicability of the exemptions at issue. *See Iqbal*, 129 S. Ct. at 1951.

performed either by a farmer or on a farm, incidently to or in conjunction with 'such' farming operations." *Id.* at 762-63.

The court finds that the allegations of the complaint clearly show plaintiff's fish farming activities to be within the definition of agriculture and therefore plaintiff to be within the agriculture exemption. Plaintiff's contention that intensive fact finding is needed to determine the applicability of the exemption is without merit. *See Robbins v. Zabarsky*, 44 F. Supp. 867, 870 (D. Mass 1942) ("[I]f facts are alleged in the complaint which make it possible to determine whether the exemption [under the FLSA] applied, the legal question of applicability of the exemption may be determined on a motion to dismiss.").

As indicated, the complaint describes plaintiff's job, prior to the 2005 opening of the second fish farm, as "to grow tilapia fish on a fish farm." (Compl. ¶ 10). Elsewhere, the complaint states that he "operated a . . . fish farm." (*Id.* ¶ 14). His specific duties included "catching and hauling fish from tanks," "cleaning the farm," "pipe fitting," and "electrical work." (*Id.*). When the second fish farm opened in or around 2005, he performed essentially the same duties. (*Id.* ¶ 15).

Consistent with the FLSA definition of agriculture, the allegations show that plaintiff was engaged in growing and harvesting living creatures for food consumption. Some of his activities come within the primary meaning of the definition of agriculture, such as growing and harvesting the fish, and others within the secondary meaning, such as cleaning the fish farm.

The conclusion that plaintiff comes within the agriculture exemption is reinforced by the regulations promulgated by the Department of Labor ("DOL") under the FLSA as the agency charged with administering it. In defining the term "farming," the regulations state that "*fish farming activities* fall within the scope of the meaning of 'farming in all its branches' and employers engaged

in such operations would be employed in agriculture." 29 C.F.R. § 780.109; *see also id.* § 780.120 (entitled "Raising of 'livestock'") (noting that while "[f]ish are not 'livestock,'" as held in *Dunkly v. Erich*, 158 F. 2d 1, 2 (9th Cir. 1947), "employees employed in propagating or farming of fish may qualify for exemption under . . . 13(b)(12)[the agriculture exemption] . . . as well as under section 13(a)(5) [fishing exemption]"). This regulatory interpretation of the FLSA is entitled to deference from the court. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 n.13 (1984).

In addition, the Field Operations Handbook ("Handbook") of the Wage and Hour Division of the DOL[5] states that "[f]ish farming is included in the term 'farming in all its branches' and an employee performing such activities is engaged in agriculture within the meaning of [§ 203(f))]." Handbook § 20b04 (6 July 1990). The court finds this interpretation persuasive although, being found in the Handbook, an enforcement manual, it is not entitled to "Chevron-style deference." *Shaliehsabou v. Hebrew Home of Greater Washington, Inc.*, 369 F.3d 797, 801-02 (4th Cir. 2004) (internal quotation marks omitted) (citing *Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 157 (1991) and *Christensen v. Harris Cnty.*, 529 U.S. 576, 586 (2000)); *see also Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1275 n.65 (11th Cir. 2008) ("[T]he DOL's Field Operations Handbook is persuasive, even though it is not entitled to *Chevron* deference.").

Further support for the proposition that plaintiff's fish farming activities constituted agriculture under the FLSA is found in a decision and order of the National Labor Relations Board.

---

[5] At the time this order was entered, a copy of the Handbook was available at the DOL website at: http://www.dol.gov/whd/FOH/.

In *Domsea Farms, Inc.*, 211 NLRB 832 (No. 19-RC-6821) (21 June 1974), the petitioner sought to represent a group of employees of a commercial salmon farming operation. The operation included four phases: "incubation, fresh water cultivation, salt water cultivation, and harvest." *Id.* at 832. Following the incubation of fertilized eggs in trays, the hatched fry are then transferred as they grow to rearing pools, then to larger cement troughs, and ultimately to a bay in saltwater pens which are designed to protect them from prey. *Id.* The fish are fed a specially formulated food, and the water temperature is controlled. *Id.*

The employer argued that the employees of the salmon farm were exempt from the National Labor Relations Act ("NLRA") because they are "agricultural laborers" under the Act. In ruling that the employees were "agricultural laborers," the Board noted that it generally determines whether an employee is an "agricultural laborer" under the NLRA by applying the definition of "agriculture" from the FLSA. Consequently, for the purposes of the petition before it, the Board sought an advisory opinion from DOL as to whether the commercial salmon operation would constitute "agriculture" under the FLSA. The DOL concluded that it did. The DOL's conclusion, as quoted by the Board in its decision, reads in relevant part as follows:

As you point out, at one time we took the position that fish farming was not "agriculture" within the meaning of Section 3(f) of the Act . . . . However, the similarities of fish farming to other types of agriculture and the fact that it was considered "agriculture" under other statutes (see Internal Revenue Regulations) induced a change in our Interpretations. Interpretative Bulletin § 780.109 (29 CFR 780.109) points out that "fish farming activities fall within the scope of the meaning of 'farming in all its branches'." Further, Interpretative Bulletin § 780.120 (29 CFR 780.120) states that while fish are not "livestock", fish farm employees are considered to be "employed in agriculture" within the meaning of Section 13(a)(6) of the Act. Accordingly, we would consider that the activities of Domsea Farms constitute "agriculture" within the meaning of Section 3(f).

*Id.*

10

Finally, while few courts have addressed the applicability of the agriculture exemption to fish farming, the decisions of those that have support this court's conclusion. In *Tullous v. Texas Aquaculture Processing Co. LLC*, 579 F. Supp. 2d 811 (S.D. Tex. 2008), an employee of a catfish processing plant, individually and on behalf of other similarly situated, sued the catfish farmers' cooperative that owned and operated the plant, along with other defendants, for overtime compensation under the FLSA. The cooperative moved for summary judgment on the ground that because the processing plant was run by farmers for agricultural purposes its employees fell within the overtime exemption for agriculture. The court ruled that the cooperative was not entitled to summary judgment because there were questions of fact regarding whether the cooperative was sufficiently independent from the catfish farmers such that it was not engaged in "actual farming operations" and was not a "farmer" within the agriculture exemption. *Id.* at 818-19 (quoting 29 C.F.R. § 780.133). An assumption fundamental to the court's ruling was that catfish farming, itself, is agriculture under the FLSA. In fact, the court notes as one relevant consideration that the defendant processing facility did "not raise catfish itself." *Id.* at 819.

The *Tullous* court relied on the decision in *Hodgson v. Idaho Trout Processors Co.*, 497 F.2d 58 (9th Cir. 1974). There, the court held that employees of a trout processing facility that processed trout raised by three trout farms, which were stockholders in the trout processing facility, did not fall within the agriculture exemption because the processing facility was not located on any of the trout farms and the processors were not raising the trout themselves. *Id.* at 59-60.

Unlike the plaintiffs in these two illustrative cases, plaintiff has not alleged that he performed any fish processing activities. Rather, as discussed, his allegations demonstrate that he was engaged in the actual raising of the fish.

11

For this and the other reasons stated, the complaint clearly shows that plaintiff's FLSA claim should be dismissed as coming within the agriculture exemption. This determination is, of course, subject to possible remediation of this defect in the proposed amended complaint.

## B.     Fishing Exemption

The second exemption invoked by defendants, found in 29 U.S.C. § 213(a)(5), relates to those employed in fishing. More precisely, it applies to:

any employee employed in the *catching, taking, propagating, harvesting, cultivating, or farming of any kind of fish*, shellfish, crustacea, sponges, seaweeds, or other aquatic forms of animal and vegetable life, or in the first processing, canning or packing such marine products at sea as an incident to, or in conjunction with, such fishing operations, including the going to and returning from work and loading and unloading when performed by any such employee

29 U.S.C. § 213(a)(5) (emphasis added). Defendants argue that the allegations in plaintiff's complaint show that plaintiff clearly falls within this exemption.

There are ample allegations to support this contention. For example, the operation at which plaintiff worked is referred to throughout the complaint as a "fish farm." (*See* Compl. ¶¶ 10, 12, 14-16). He describes his job as having been "to grow tilapia fish on a fish farm." (*Id.* ¶ 10). He identifies his specific duties as including "physical labor, cleaning the farm, heavy lifting, pipe fitting, catching and hauling fish from tanks, electrical work, and other manual labor." (*Id.* ¶ 14). This listing seems consistent with a listing of duties in the Handbook that are encompassed by the fishing exemption. *See* Handbook § 25d02(b), (c) (15 Apr. 1994). These activities would further support a conclusion that the "growing of tilapia" as described by plaintiff in his complaint constitutes the farming of fish covered by the fishing exemption.

Notwithstanding these considerations, plaintiff asserts that "[a] totally enclosed and automated fish production facility with fiberglass fish tanks operated by a national cooperative," as

12

is purportedly involved here, was not the type of operation that Congress intended to cover in the fishing exemption. (Pl.'s Resp. 9). Rather, he asserts that the fishing exemption was intended to apply only to activities performed "offshore" or "in rivers, oceans, or other bodies of water" that are subject to the natural elements. (*Id.* 11).

Support for this view is found in the DOL regulations interpreting the fishing exemption, which in turn are based on the legislative history of the exemption. The regulations acknowledge that the statute places no limitation on where "catching, taking, propogating, harvesting, cultivating, or farming of any kind of fish . . . or other aquatic forms of animal and vegetable life" must take place. 29 U.S.C. § 784.130. The regulations posit, however, that amendments to the exemption in 1961 were intended to exclude on-shore activities from the exemption and leave it applicable solely to offshore activities. *Id.* § 784.120. The regulations rely on the Senate report to the 1961 amendments, which does, in fact, describe this as their intent. S. Rep. No. 87-145, at 31 (1961), as reprinted in 1961 U.S.C.C.A.N. 1620, 1652.

The court declines to resolve this dispute over the applicability of the fishing exemption. Having found that plaintiff is exempt from the FLSA under the agriculture exemption, whether he is also exempt under the fishing exemption is essentially moot.

## III. NCWHA CLAIM

The NCWHA is modeled after the FLSA, *Chandler v. Cheesecake Factory Restaurants, Inc.,* 239 F.R.D. 432, 434 (M.D.N.C. 2006) (citing *Whitehead v. Sparrow Enter.*, 167 N.C. App. 178, 181, 605 S.E.2d 234, 237 (2004)), and provides for overtime compensation for employees who work more than 40 hours in a workweek, as the FLSA does, *see* N.C. Gen. Stat. § 95-25.4(a). Also as with the FLSA, the NCWHA overtime requirement is subject to various exemptions. *See id.* § 95-25.14.

13

Defendants contend that plaintiff's NCWHA claim should be dismissed, in part, because he falls within an exemption in the NCWHA for employees subject to the FLSA. Defendants are correct that employees who come within the FLSA are exempt from the NCWHA, subject to certain exceptions not relevant here.[6] It provides expressly that the overtime provisions do not apply to "[a]ny person employed in an enterprise engaged in commerce or in the production of goods for commerce as defined in the Fair Labor Standards Act." *See* N.C. Gen. Stat. § 95-25.14(a)(1). This language, of course, parrots the description of persons who are subject to the FLSA overtime requirements. *See* 29 U.S.C. § 207(a)(1); *see also Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 353 416 S.E. 2d 166, 169 (1992) ("Businesses covered by the FLSA are exempt from the state Wage and Hour Act."); *Martin v. Airborne Exp.*, 16 F. Supp. 2d 623 629 (E.D.N.C. 1996) (holding that an employee of a courier service "engaged in commerce or in production of goods for commerce" under the FLSA, was also exempt from the overtime provisions of the NCWHA pursuant to N.C. Gen. Stat. § 95-25.14(a)(1)). Not surprisingly, plaintiff effectively admits in his complaint that he is subject to the FLSA. He alleges that he "was an employee of defendants as defined by the NCWHA," which term has essentially the same meaning in the FLSA,[7] and that defendants "are an enterprise 'engaged in commerce' or in the production, selling, or handling of goods for commerce as defined by the NCWHA and the FLSA." (Compl. ¶¶ 4, 7, 8). Other allegations of the complaint provide detailed support for these allegations. (*Id.* ¶¶ 5, 10-12, 14-15). Plaintiff does not otherwise

---

[6] One exception is for "any employer or employee exempt from the . . . overtime . . . requirements of the [FLSA] for whom there is no comparable exemption under [the NCWHA]." N.C. Gen. Stat. § 95-25.14(a)(1)c. The court has, of course, determined that plaintiff is exempt from the FLSA overtime requirements pursuant to the agriculture exemption but, as discussed directly below, there is a comparable exemption under the NCWHA. *See id.* § 95-25.14(a)(2).

[7] The definition of "employee" in the NCWHA reads: "'Employee' includes any individual employed by an employer." N.C. Gen. Stat. § 95.2(4). The definition in the FLSA reads: "Except as provided in paragraphs (2), (3), and (4), the term 'employee' means any individual employed by an employer." 29 U.S.C. § 203(e)(1).

14

dispute that he is subject to the FLSA. Consequently, the court concludes that, based on the allegations in the complaint, plaintiff is clearly not covered by the NCWHA under the FLSA exemption, and plaintiff's NCWHA claim should therefore be dismissed, subject to possible salutary amendment pursuant to plaintiff's motion to amend.

Alternatively, defendants contend that plaintiff's NCWHA claim should be dismissed because plaintiff comes within an exemption under the NCWHA for agricultural employees. Indeed, as defendants point out, the NCWHA exempts from its overtime requirements "[a]ny person employed in agriculture, as defined under the [FLSA]." N.C. Gen. Stat. § 95-25.14(2). Plaintiff concedes that "the NCWHA incorporates the Agricultural and Fishing exemptions contained in the FLSA," referring to 29 U.S.C. §§ 213(b)(12), (a)(5). (Pl.'s Resp. 17). Because the court has determined that the agriculture exemption applies to plaintiff, that exemption provides an additional ground for dismissal of his NCWHA claim clearly shown by the allegations of the current version of the complaint.

## IV. WRONGFUL TERMINATION CLAIM

There is a strong presumption under North Carolina law that employment is at-will unless the employment relationship fits within an exception. *See, e.g.*, *Franco v. Liposcience, Inc.*, — N.C. App. — , 676 S.E. 2d 500, 503 (2009); *Kurtzman v. Applied Analytical Indus., Inc.*, 347 N.C. 329, 331-32, 493 S.E. 2d 420, 422 (1997). "'As a general rule, an employee-at-will has no claim for relief for wrongful discharge . . . [because] [e]ither party to an employment-at-will contract can terminate the contract at will for no reason at all, or for an arbitrary or irrational reason.'" *Combs v. City Elec. Supply Co.*, — N.C. App. —, 690 S.E. 2d 719, 723 (2010) (quoting *Tompkins v. Allen*, 107 N. C. App. 620, 622, 421 S.E. 2d 176, 178 (1992) (citations omitted)).

15

In the case of *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 381 S.E. 2d 445 (1989), the North Carolina Supreme Court established the so-called public policy exception to this rule. The court ruled that, "'[W]hile there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy.'" *Id.* at 175, 381 S.E. 2d at 447 (alterations in original) (quoting *Sides v. Duke Univ.*, 74 N.C. App. 331, 342, 328 S.E. 2d 818, 826 (1985)). The court reasoned that "[a] different interpretation would encourage and sanction lawlessness, which law by its very nature is designed to discourage and prevent." *Id.* The public policy exception is a narrow one. *Roberts v. First-Citizens Bank and Trust Co.*, 124 N.C. App. 713, 721, 478 S.E. 2d 809, 814 (1996). Although the North Carolina courts have not adopted a listing of the specific actions to which it applies, they have recognized claims under the exception "'where the employee was discharged (1) for refusing to violate the law at the employer's request, (2) for engaging in a legally protected activity, or (3) based on some activity by the employer contrary to law or public policy.'" *Combs*, 690 S.E. 2d at 723 (quoting *Ridenhour v. IBM Corp.*, 132 N.C. App. 563, 568-69, 512 S.E. 2d 774, 778 (1999)). "These narrow exceptions to the at-will employment doctrine 'have been grounded in considerations of public policy designed either to prohibit status-based discrimination or to insure the integrity of the judicial process or the enforcement of the law.'" *Id.* (quoting *Kurtzman*, 347 N.C. at 333-34, 493 S.E. 2d at 423).

Under the public policy exception, the employee has the burden of pleading and proving that he was dismissed and that his dismissal occurred for a reason that violates public policy. *See Salter v. E & J Healthcare, Inc.*, 155 N.C. App. 685, 693, 575 S.E. 2d 46, 51 (2003). In the specific context of alleged retaliation, the plaintiff must show that "'(1) [he] engaged in a protected activity, (2) the

16

employer took adverse action, and (3) there existed a causal connection between the protected activity and the adverse action.'" *Id.* (quoting *Brewer v. Cabarrus Plastics, Inc.*, 130 N.C. App. 681, 690, 504 S.E. 2d 580, 586 (1998)).

Defendants contend that plaintiff's wrongful discharge claim is fatally flawed because the allegations of the complaint, by establishing that he is exempt from the NCWHA, fail to show that any public policy that protected him from discharge or therefore that his discharge violated any public policy. The court agrees. *See Jarman v. Deason*, 173 N.C. App. 297, 299, 618 S.E.2d 776, 778 (2005) (dismissing complaint for wrongful termination in violation of public policy against age discrimination in employment for failure to state a claim where plaintiff did not fall within state statute declaring anti-discrimination policy); *see also Considine v. Compass Grp. USA, Inc.*, 145 N.C. App. 314, 319-22, 551 S.E.2d 179, 183-84, *aff'd*, 354 N.C. 568, 557 S.E.2d 528 (2001) (dismissing complaint for wrongful termination in violation of public policy where plaintiff failed to allege in the complaint that "defendant's conduct [in discharging plaintiff] violated any explicit statutory or constitutional provision"); *accord Combs*, 690 S.E. 2d at 723 (reversing directed verdict dismissing wrongful discharge claim in violation of public policy where plaintiff presented more than a scintilla of evidence that alleged statutory violation underlying his claim occurred). Plaintiff's North Carolina wrongful termination claim should therefore be dismissed, again, subject to consideration of plaintiff's proposed amendments.

## V. PUNITIVE DAMAGES CLAIM

Defendants seek dismissal of plaintiff's punitive damages claim on the grounds that it necessarily fails if his other claims fail. The court agrees.

17

Although plaintiff purports to assert his claim for punitive damages as a separate cause of action, a punitive damages claim is not, in fact, an independent action, but is dependent upon the award of compensatory damages. *See, e.g.*, N.C. Gen. Stat. § 1D-15(a) ("Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages . . . ."); *see also Iadanza v. Harper*, 169 N.C. App. 776, 783, 611 S.E. 2d 217, 223 (2005) (pre-adoption of N.C. Gen. Stat. § 1D-1, et seq.) ("As a general rule, [p]unitive damages do not and cannot exist as an independent cause of action, but are mere incidents of the cause of action[.]" (internal quotation marks omitted)). Therefore, the insufficiency of plaintiff's FLSA, NCWHA, and wrongful discharge claims negates his claim for punitive damages. *See, e.g.*, N.C. Gen. Stat. § 1D-15(a); *Sellers v. Morton*, 191 N.C. App. 75, 85, 661 S.E. 2d 915, 923 (2008) (holding that summary judgment dismissing underlying claim of tortious interference precluded award of punitive damages on that claim).

## PLAINTIFF'S MOTION TO AMEND

## I.   STANDARD FOR AMENDMENT PURSUANT TO RULE 15(a)(2)

Where, as here, more than 21 days have passed after service of a Rule 12(b)(6) motion, Rule 15(a)(2) permits a party to amend the challenged pleading only with written consent or leave of court. Fed. R. Civ. P. 15(a)(2). The rule further provides that the court "should freely give leave when justice so requires." *Id.* Rule 15 is a "liberal rule [that] gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006); *Intown Props. Mgmt., Inc. v. Transcom, Ins. Co.*, 271 F.3d 164, 170 (4th Cir. 2001) (holding that Rule 15 should be construed liberally "so that claims can be adjudicated on the merits"). Leave to amend is to be granted in the absence of "bad faith, undue

18

prejudice to the opposing party, or futility of amendment." *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000) (internal citations omitted). Delay alone, however, is an insufficient reason to deny a motion to amend. *See Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980).

## II. ANALYSIS OF PROPOSED AMENDED COMPLAINT

In the proposed amended complaint, plaintiff does not assert any additional claims; the claims are the same as those asserted in the original complaint. Rather, the amendments focus on the equipment used at the facilities where plaintiff worked (*e.g.*, metal buildings, tanks, pumps, boilers, computers) and the related system of production (Pro. Am. Compl. ¶¶ 18-23; 27-29) and plaintiff's duties at the facilities (*id.* ¶¶ 16, 17, 26). The proposed amended complaint also uses the terms "production facilities," "aquaculture facilities," and "aquaculture production facilities" in lieu of "fish farm." (*Id., e.g.*, ¶¶ 10, 12, 16). Other changes are reflected in the proposed amended complaint as well. (*Id., e.g.*, ¶¶ 10, 11, 14, 15 (describing leasing and ownership arrangements for the facilities); 16, 27 (identifying the families who owned the facilities at which plaintiff worked)). As indicated, the stated purpose of the amendments was to help ensure that plaintiff does not come within the agriculture or fishing exemptions.

But the new allegations, including use of the jargon for "fish farm," do not change the nature of the work plaintiff was allegedly performing. If anything, they reinforce the conclusion that plaintiff comes within the agriculture exemption.[8]

---

[8] Defendants contend that the doctrine of judicial estoppel applies to bar plaintiff from omitting from the amended complaint the allegation that his duties included "catching and hauling fish," as he did. (*Compare* Compl. ¶14 *with* Pro. Am. Compl. ¶ 26). Assuming without deciding that judicial estoppel would apply in this context, it would not bar plaintiff's proposed amended allegations because, as indicated, the court does not believe them to represent a material change of position by plaintiff for purposes of the agriculture exemption. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (noting that for judicial estoppel to apply courts typically require that a party's later position be "clearly inconsistent" with its earlier position (internal quotations omitted)).

19

For example, plaintiff alleges that the "aquaculture facilities [were] for the purpose of producing tilapia." (*Id.* ¶ 10). His job was "to operate" the aquaculture production facilities. (*Id.* ¶ 16). His formal job description, as an Aquaculture Facilities Specialist, was: "[T]o support and enhance the production of tilapia fry and fingerlings for the purpose of stocking production facilities. To support and enhance the production of tilapia in all aspects for the purpose of maximizing pounds available for sale." (*Id.* ¶ 17). He goes on to allege additional details regarding his duties and responsibilities:

> [Plaintiff] was responsible for procuring fry (fish hatched from eggs in an incubator) and fingerlings, growing the tilapia, monitoring and programming the computers to assure water quality, cleaning the facility, cleaning the drained tanks manually, loading fingerlings for transport to other growing facilities, loading produced fish onto live well trucks, maintenance of all industrial and mechanical components (including the computers, motors, pumps and all supporting electrical, mechanical and plumbing systems) and was responsible for ordering salt, bicarbonate, propane, liquid oxygen and feed, and at times would submerge himself in wastewater holding tanks to unclog them if needed.

(*Id.* ¶ 26). These activities as alleged in the proposed amended complaint fall squarely within the primary and secondary meanings of the definition of agriculture as did the like activities as described in the original complaint. *Cf.* Handbook § 25d02(b), (c) (15 Apr. 1994) (describing many of such activities as coming within the definition of "fish farming" for purposes of the fishing exemption).

The gist of the proposed additional allegations by plaintiff is to accentuate the automated nature of the fish farming operation in which he worked. But automation of an activities does not exclude them from the definition of agriculture where, as here, they are carried on as part of agricultural function. *See Maneja v. Waialua Agricultural Co.*, 349 U.S. 254, 261 (1955) ("There is no reason to construe the FLSA so as to discourage modernization in performing [an agricultural] function."); *see also* 29 C.F.R. § 780.402 ("The section 13(b)(12) exemption for employment in

20

agriculture is intended to cover all agriculture, including 'extraordinary methods' of agriculture as well as the more conventional ones and large operators as well as small ones."); 29 C.F.R. § 780.106 ("It is also immaterial whether the agricultural or horticultural commodities are grown in enclosed houses, as in greenhouses or mushroom cellars, or in an open field.")

Thus, the amended complaint suffers from the same defects that subject the original complaint to dismissal. The proposed amendments are therefore futile and the motion to amend should be denied.

At the same time, the fecklessness of the proposed amendments leaves unremedied the defects as they appear in the original complaint. It should accordingly be dismissed. Moreover, given the nature of these defects and the failed attempt to remedy them, the dismissal should be with prejudice.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that:

1.    Plaintiff's motion to amend is DENIED;

2.    Defendants' motion to dismiss (D.E. 4) is GRANTED; and

3.    This case is DISMISSED with PREJUDICE.

SO ORDERED, this 29 day of September 2010.

James E. Gates
United States Magistrate Judge

21